United States District Court
Southern District of Texas
**FILED**

AUG 18 2023

Nathan Ochsner, Clerk

United States District Court
Southern District of Texas
**ENTERED**
August 18, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

| | | |
|---|---|---|
| **ROGELIO REGALADO,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 7:23-CV-0049** |
| | § | |
| **BOBBY LUMPKIN,** *et al.,* | § | |
| | § | |
| **Respondents.** | § | |

## REPORT AND RECOMMENDATION

Petitioner ROGELIO REGALADO, a state prisoner proceeding pro se, initiated this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). (Dkt. No. 1). Petitioner is serving a five-year term of imprisonment on a conviction by guilty plea for burglary of a habitation out of the 332nd District Court of Hidalgo County, Texas. Although Petitioner was released at one point on a form of parole known as mandatory supervision, this was revoked insofar as Petitioner violated the conditions of his release.[1] Now, seeking federal habeas review, Petitioner raises several claims for relief related to the release conditions and the revocation proceedings.

Respondent has filed an answer (Dkt. No. 8) together with electronic copies of the state court record (Dkt. No. 9) and the administrative record of the revocation proceedings (Dkt. Nos.

---

[1] In Texas, "mandatory supervision" refers to the release of an eligible inmate from prison so that the inmate may serve the remainder of their sentence under the supervision of the pardons and paroles division of the Texas Department of Criminal Justice. Tex. Gov't Code § 508.001(5). A parole panel must, as a general matter, order the inmate's release when the calendar time the inmate has served, plus any accrued good conduct time, equals the term to which the inmate was sentenced. *See id.* §§ 508.147(a), 508.149. "An inmate released to mandatory supervision is considered to be released on parole." *Id.* § 508.147(b). For purposes of revocation, the law makes no distinction between mandatory supervision and parole. *Coleman v. Dretke*, 395 F.3d 216, 219 n.1 (5th Cir. 2004). Accordingly, the terms "mandatory supervision" and "parole" will be used interchangeably throughout this report.

8-1, 8-2).[2]   Through the answer, Respondent moves for the dismissal of the Petition on both procedural and substantive grounds.  (Dkt. No. 8 at 4-17).  Petitioner has filed briefing in reply (Dkt. Nos. 11, 16),[3] as well as several ancillary motions for relief, including a *Motion for Summary Judgment* (Dkt. No. 17) and a *Motion for Expansion of the Record* (Dkt. No. 12).[4]  Through the Motion for Expansion of the Record, Petitioner requests that the court hold an evidentiary hearing on his claims and that he be allowed the opportunity to engage in written discovery.

This case was referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1).   After review of the record and relevant law, the Magistrate Judge RECOMMENDS that Petitioner's claims be summarily DISMISSED or DENIED, as applicable, and that Petitioner's Motion for Summary Judgment (Dkt No. 17) and Motion for Expansion of the Record (Dkt. No. 12) be DENIED.   The Magistrate Judge also RECOMMENDS that a Certificate of Appealability be DENIED.

## I. BACKGROUND

### A. Conviction, Sentence, and Commitment

On March 18, 2020, Petitioner pleaded guilty to the second-degree felony of burglary of a habitation.  (*See* Dkt. No. 9-2 at 9, 11-13).   The state court sentenced him to a five-year prison

---

[2] Any citations to the state court and administrative records will refer to the docket entry, attachment, and page numbers as appearing in this court's case management/electronic case-file (CM/ECF) system.

[3] Although Petitioner labels one of his briefs as a *Notice of Constitutional Challenge and Motion for Declaratory Relief* (Dkt. No. 11), the filing merely addresses certain arguments by Respondent as to the nature of the relief sought through the Petition (*see id.* at 2), such that the filing is most properly construed as a legal brief rather than a request for a declaration of rights.

[4] Petitioner has also filed a *Motion for Appointment of Counsel* (Dkt. No. 12-1), a *Motion to Compel Production of Missing State Habeas Court Records* (Dkt. No. 18), and a *Motion for Leave to Amend the Petition* (Dkt. No. 14), each of which are addressed through contemporaneous orders.

term. (*Id.* at 11-13). Petitioner was then committed to the custody of the Texas Department of Criminal Justice (the "TDCJ") to serve his sentence. (*Id.* at 11).

## B. Mandatory Supervision

Eventually, the Parole Division of the TDCJ determined that Petitioner was eligible for mandatory supervision and submitted him for consideration by the Texas Board of Pardons and Paroles (the "Parole Board").[5] (*See* Dkt. No. 8-2 at 5).

On November 15, 2021, the Parole Board issued an order for Petitioner's release on mandatory supervision (*Id.* at 5-8), which release was subject to several statutorily mandated and special conditions, including the special condition that Petitioner "comply with [an] Electronic Monitoring program" (*id.* at 5).

On February 8, 2022, a parole officer, Yvette Vidaurri, reviewed the special conditions with Petitioner—to include the special condition as to the electronic monitoring program—and fitted Petitioner with a GPS tracking device. (*See id.* at 9-12). Among the terms of the monitoring program, Petitioner was required to always wear the tracking device and remain in his residence unless otherwise approved by the parole officer. (*Id.* at 11). Petitioner was required to charge the tracking device as instructed by the parole officer. (*Id.*). He was also required to respond to all text messages or electronic notifications from the parole officer. (*Id.*).

---

[5] Generally, the function of the Parole Division is to supervise releasees from the TDCJ. The Parole Division also performs various pre-release functions, including tracking parole eligible cases and submitting them for consideration by the Parole Board. *See* Texas Department of Criminal Justice, Parole Division, available at https://www.tdcj.texas.gov/divisions/pd/index.html (last visited Aug. 18, 2023). Notably, the Parole Division does not make decisions as to inmate release, the conditions of release, or revocation. *Id.* Those decisions are made instead by the Parole Board, although the Parole Division will provide the Parole Board with the documentation needed to carry out its responsibilities. *Id.* The main responsibility of the Parole Board is the discretionary or, as applicable, the mandatory release of eligible inmates to a plan of supervision. *See* Texas Department of Criminal Justice, Frequently Asked Questions, https://www.tdcj.texas.gov/faq/tbcj.html (last visited Aug. 18, 2023). The Parole Board also determines the conditions of release, imposing any special conditions on a case-by-case basis, and whether release should be revoked based on violations of the conditions. *Id.*

**C. Violation Notices and Arrest**

On February 12, 2022, Officer Vidaurri issued three violation reports for violations of the electronic monitoring program occurring on February 10th. (*Id.* at 13-16). She alleged that Petitioner failed to charge the tracking device, such that it lost GPS signal, and that Petitioner left his residence for several hours in the early morning and, again, in the late afternoon. (*Id.* at 3, 13-16). The Parole Division issued a contemporaneous warrant for Petitioner's arrest. (*See id.* at 16).

On March 2, 2022, Petitioner was arrested on the warrant. (*See id.* at 17).

**D. Revocation Proceedings**

On March 4, 2022, Officer Vidaurri met with Petitioner at the Hidalgo County Detention Center to review a Parole Division form entitled *Rights of the Offender in the Revocation Process* (the "Revocation Form"). (*See* Dkt. No. 1 at 6; *see also* Dkt. No. 8-2 at 2-4).

The Revocation Form includes three sections that are relevant to these proceedings: Section A, explaining the offender's rights in the revocation process; Section B, providing notice of the alleged violations of release; and Section C, containing waivers of hearings. (*See* Dkt. No. 8-2 at 2-4). These sections are dispositive of most of Petitioner's claims and will thus be detailed, as necessary, in context of the analysis further below. For present purposes, it is sufficient to note that Petitioner, through the application of his marks and signatures on the Revocation Form, purportedly admitted to each of the three noticed violations of the electronic monitoring program (under Section B) and waived a revocation hearing (under Section C). (*See id.* at 3-4).

On March 17, 2022, the Parole Board formally revoked Petitioner's release and ordered him back into TDCJ custody. (*See id.* at 20).

**E. State Habeas Proceedings**

Through an application dated August 3, 2022, Petitioner filed for state habeas relief with the Texas Court of Criminal Appeals (the "TCCA"). (Dkt. No. 9-2 at 15-34). Through his state application, Petitioner raised claims challenging his mandatory supervision conditions, specifically, the implementation of the electronic monitoring program, and the outcome of the revocation proceedings, among others. (*See id.* at 20-33). On October 19, 2022, the TCCA, without a written order, denied Petitioner's application. (Dkt. No. 9-1).

**F. Federal Habeas Proceedings**

The Petition was filed on January 26, 2023.[6] (Dkt. No. 1 at 10). Later, upon being ordered to either pay the applicable $5 filing fee or submit a complete application to proceed in forma pauperis, Petitioner opted to pay the filing fee. (*See* Dkt. No. 4). The Magistrate Judge then ordered Respondent to file a responsive pleading. (Dkt. No. 5).

On June 21, 2023, Respondent filed an answer (Dkt. No. 8) along with the state court record (Dkt. No. 9) and the administrative record of the revocation proceedings (Dkt. Nos. 8-1, 8-2). Petitioner was ordered to reply. (Dkt. No. 10). He has since filed further briefing (Dkt. Nos. 11, 16), as well as his Motion for Summary Judgment (Dkt. No. 17) and Motion for Expansion of the Record (Dkt. No. 12).

## II. GROUNDS FOR RELIEF

Petitioner raises what he labels as four different claims for relief, although these would appear to fall into two larger categories.

---

[6] This is the date on which Petitioner claims to have placed the Petition in the prison mailing system. (Dkt. No. 1 at 10). Filings by pro se prisoners are governed by the mailbox rule, such that they are deemed filed when they are deposited for mailing. *Medley v. Thaler*, 660 F.3d 833, 835 (5th Cir. 2011) (per curiam).

First, as far as the conditions of mandatory supervision are concerned, Petitioner complains that he was placed on the GPS tracking device even though the Parole Board ordered no such condition. (*See* Dkt. No. 1 at 6).

Petitioner also raises three sub-claims asserting due process violations over the revocation proceedings, specifically, that Officer Vidaurri (1) failed to properly advise him as to the waiver of the revocation hearing, (2) failed to properly explain his right to waive only the preliminary hearing, and (3) generally failed to properly explain the revocation process. (*Id.* at 6-7). A common thread running through these sub-claims is that Petitioner unknowingly waived his revocation hearing or was otherwise coerced by Officer Vidaurri into the waiver. According to Petitioner, Officer Vidaurri told him that he "was 'wasting [her] time' if [Petitioner] did not waive the [revocation] hearing" insofar as GPS tracking records were able to verify the violations. (*Id.* at 7). Petitioner goes on to allege that Officer Vidaurri essentially ignored his question over whether he could waive a preliminary hearing but still ask for a revocation hearing. (*See id.*). Petitioner also alleges that Officer Vidaurri "did not inform [him] that the [Parole Board] would in all probability revoke if [he] waived the revocation hearing." (*Id.* at 6).

### III. LEGAL STANDARDS

#### A. Collateral Review Under § 2254

Federal habeas relief for persons in state custody is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996. The standard of review is stated by subsection (d) of the statute, which provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal habeas relief under § 2254 is only available on grounds that the petitioner is "in custody" in violation of the Constitution or federal law. *See Preiser v. Rodriguez*, 411 U.S. 475, 484-87 (1973). The "in custody" language requires that the petitioner be restrained under the conviction or sentence under attack at the time the habeas petition is filed. *See Maleng v. Cook*, 490 U.S. 488, 490-91 (1989). Although the petitioner need not be under physical custody, there must be some sort of restraint or restriction on their liberty not shared by the public. *See id.*; *see also Jones v. Cunningham*, 371 U.S. 236, 239-40 (1963). A petitioner may generally seek § 2254 relief on the ground that they are in custody based on an unconstitutional action by a parole board. *See Williams v. Johnson*, 208 F.3d 1007, 1007 (5th Cir. 2000) (per curiam) (citing *Newby v. Johnson*, 81 F.3d 567, 568-69 (5th Cir. 1996)).

For purposes of determining disputed questions of law under subsection (d)(1), a state court decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to a Supreme Court decision on a question of law or if it arrives at a different result than the Supreme Court did on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of federal law occurs where "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. This is an "objectively unreasonable" standard, such that "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal

law erroneously or incorrectly." *Id.* at 409, 411. A petitioner must show, instead, that the state court's ruling on their claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)) (internal quotations omitted). In conducting a review under subsection (d)(1), the factual record is limited to that before the state courts. *See Woodfox v. Cain*, 772 F.3d 358, 368 (5th Cir. 2014) (citing *Cullen v. Pinholster*, 563 U.S. 170, 180-82, 187-88 (2011)).

These deferential standards apply even where, as here, the TCCA denied habeas relief without written order. *Santellan v. Cockrell*, 271 F.3d 190, 193-94 (5th Cir. 2001); *see also Woodfox*, 772 F.3d at 368. There is no requirement that a state court write an opinion explaining its reasoning. *Harrington*, 562 U.S. at 98. "For such a situation, [the federal habeas court]: (1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).

In terms of disputed factual findings under subsection (d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(d)(2)). Any factual findings by the state court are presumed to be correct unless they are rebutted by the petitioner through clear and convincing evidence. *Id.* (citing 28 U.S.C. § 2254(e)(1)). "[A] state court's factual determination is 'not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Woodfox*, 772 F.3d at 368 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). This presumption applies not only to express factual

findings, but also to implicit or unarticulated findings which are necessary to the state court's conclusion of mixed law and fact. *Murphy v. Davis*, 901 F.3d 578, 597 (5th Cir. 2018) (quoting *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001)) (quotations omitted). In conducting this factual determination, a federal habeas court is necessarily limited, by the language of subsection (d)(2) itself, to a review of the state court factual record. *See Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (citing *Pinholster*, 563 U.S. at 185 n.7).

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam), the raising of a constitutional claim requires that the petitioner plead sufficient facts beyond conclusory allegations, *Black v. Davis*, 902 F.3d 541, 547 (5th Cir. 2018), *cert. denied*, 140 S. Ct. 859 (2020).

## B. Parole Revocation and Due Process

Through *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Supreme Court held that parolees are entitled to at least some—although not the full panoply of—procedural due process rights in the context of revocation proceedings. *See id.* at 480. Indeed, because parole arises after the imposition of sentence, a revocation operates to deprive the parolee, "not of [an] absolute liberty to which every citizen is entitled, but only [a] conditional liberty properly dependent on [the] observance of special parole conditions." *Id.* To the extent that a parolee is entitled to procedural due process, these protections apply at two critical stages of the parole revocation process, specifically, the preliminary hearing and the final revocation hearing. *See Emerson v. Thaler*, 2010 WL 4791510, at *3-4 (S.D. Tex. Nov. 17, 2010) (citing *Morrissey*, 408 U.S. at 486-87, 489).

The first stage is the preliminary hearing. *Morrissey*, 408 U.S. at 486-87. The purpose of the preliminary hearing is to determine "whether there is probable cause or [a] reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole

conditions." *Id.* at 486.  At least three procedural protections must be provided: (1) the delivery of notice stating the parole violations alleged, that a preliminary hearing will take place, and the purpose of the hearing; (2) an opportunity for the parolee to appear at the hearing, speak on their own behalf, and bring documents or individuals who can provide relevant information to the hearing officer; and (3) the availability at the hearing of persons who have given adverse information on which the parole revocation may be based so that they may be questioned in the parolee's presence. *See id.* at 486-87.

If it is determined that there is probable cause for the violations, then the parolee must be afforded the option of a final revocation hearing. *Emerson*, 2010 WL 4791510, at *3.  This involves "a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Morrissey*, 408 U.S. at 488.  The following procedures are required: (1) written notice of the violations charged; (2) disclosure of the evidence against the parolee; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing officer; and (6) a written statement by the factfinders identifying the evidence and reasons supporting the revocation decision. *Williams v. Johnson*, 171 F.3d 300, 304 (5th Cir. 1999) (citing *Morrissey*, 408 U.S. at 489), *cert. denied*, 528 U.S. 882 (1999).

That said, consistent with due process principles, a final revocation hearing—or a preliminary hearing for that matter—may be knowingly waived. *See Byrd v. McKaskle*, 733 F.2d 1133, 1138 (5th Cir. 1984); *see also Wilson v. Thaler*, 2012 WL 202079, at *3-4 (S.D. Tex. Jan. 20, 2012); *Garrison v. Johnson*, 2001 WL 194925, at *4-5 (N.D. Tex. Feb. 26, 2001).  It also bears noting that a preliminary hearing may be waived by operation of the parolee's other admissions and waivers.  Where a parolee admits to the alleged violations and waives a revocation hearing,

this establishes probable cause or reasonable ground to believe they violated their parole conditions, thus rendering a formal probable cause determination and hearing moot. *See De La Garza v. Thaler*, 2012 WL 2520864, at *10 (N.D. Tex. May 18, 2012), *report and recommendation adopted*, 2012 WL 2511584 (N.D. Tex. June 29, 2012).

## IV. ANALYSIS

Petitioner's two classes of claims—those concerning the conditions of his mandatory supervision and whether he was afforded due process for purposes of the revocation proceedings—will be discussed in turn, followed by Petitioner's evidentiary-related requests.

### A. Conditions of Mandatory Supervision

Petitioner claims that it was improper for Officer Vidaurri to place him on the GPS tracking device as part of the electronic monitoring program. (Dkt. No. 1 at 6). According to Petitioner, rather than a GPS tracker, the Parole Board ordered the use of a "curfew monitor." (*See id.*). In terms of relief, Petitioner presumably requests the issuance of an order precluding the use of a GPS tracker. (*See id.* at 7).

Respondent moves to dismiss this claim on the ground that challenges to the conditions of mandatory supervision are not cognizable on a writ of habeas corpus. (Dkt. No. 8 at 12). Respondent would take the position, perhaps, that suit is instead proper under the civil rights statute, 42 U.S.C. § 1983. As a general matter, habeas corpus is used to challenge the *fact or duration* of confinement, while § 1983 is used to challenge the *conditions* of confinement. *See Poree v. Collins*, 866 F.3d 235, 242-44 (5th Cir. 2017).

Through his reply briefing, Petitioner apparently concedes that this claim does not sound in habeas insofar as the mandatory supervision conditions were carried out by the Parole

Division—i.e., an executive agency of the state rather than a judicial body—and he does not intend on "attacking the finality of either [his] conviction or sentence . . . ."[7] (*See* Dkt. No. 11 at 2).

The precise nature of Petitioner's claim—though it presents an interesting question—need not be resolved here.[8] This is because Petitioner's sought-after relief cannot be afforded due to the revocation of his mandatory supervision, which fact renders his claim procedurally moot. One district court out of the Houston Division faced a similar situation in *De La Cerda v. Dretke*, 2005 WL 2656349 (S.D. Tex. Oct. 17, 2005), where a former parolee complained about the conditions of his mandatory supervision, including the imposition of electronic monitoring. *See id.* at *4-7. Questioning whether the matter had been mooted by a revocation, the court explained that—

> a case becomes moot if it "no longer present[s] a case or controversy under Article III, § 2 of the Constitution." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Under the case-or-controversy requirement, "[t]he parties must continue to have a 'personal stake in the outcome' of the lawsuit.'" *Id.* (quoting *Lewis v. Cont'l Bank Corp.*,

---

[7] Petitioner confirms this position in his Motion for Leave to Amend the Petition, asking that he be allowed to sever and file the claim as a separate civil rights action under § 1983. (*See* Dkt. No. 14 at 1).

[8] The federal courts recognize that the line between habeas and § 1983 can be a blurry one. *See Poree*, 866 F.3d at 243 (quoting *Cook v. Tex. Dep't of Crim. Just. Transitional Plan. Dep't*, 37 F.3d 166, 168 (5th Cir. 1994)) (quotations omitted). This is especially true when determining whether a prisoner released to mandatory supervision is challenging the fact or duration of confinement or its conditions. *See Winchester v. Quarterman*, 2009 WL 5061801, at *2 (S.D. Tex. Dec. 15, 2009) (citing *De La Cerda v. Dretke*, 2005 WL 2656349, at *5 (S.D. Tex. Oct. 17, 2005)). Neither the Supreme Court nor the Fifth Circuit have addressed the question directly. *See Morgan v. Texas Bd. of Pardons & Paroles*, 2010 WL 5266125, at *1 (W.D. Tex. Dec. 15, 2010) (citing *Coleman v. Dretke*, 409 F.3d 665, 670 (5th Cir. 2005) (per curiam)). The district courts in the Fifth Circuit fall on both sides of the habeas line. *Compare Winchester*, 2009 WL 5061801, at *2-4 (reasoning that habeas was the proper vehicle for challenging the mandatory supervision conditions of electronic monitoring and sex-offender treatment because a successful outcome would remove constraints on the petitioner's liberty), *and De La Cerda*, 2005 WL 2656349, at *4-6 (reasoning that habeas was the proper vehicle for challenging the mandatory supervision conditions of placement in a community confinement center and electronic monitoring because petitioner "challenge[d] the fact of the restrictions imposed on his liberty"), *with Sledge v. Thaler*, 2010 WL 2817044, at *5-6 (N.D. Tex. June 28, 2010) (reasoning that § 1983 was the proper vehicle for challenging the parole conditions of electronic monitoring and sex-offender treatment because a successful outcome would not have resulted in an earlier release from custody), *report and recommendation adopted*, 2010 WL 2817040 (N.D. Tex. July 14, 2010).

494 U.S. 472, 477-78 (1990)). "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer*, 523 U.S. at 7 (quoting *Lewis*, 494 U.S. at 477).

A challenge to the validity of a conviction satisfies the Article III case-or-controversy requirement because the incarceration, or the restrictions imposed by the terms of parole, constitute a concrete injury caused by the conviction and redressable by invalidation of the conviction. *See Spencer*, 523 U.S. at 7; *see also Carafas v. LaVallee*, 391 U.S. 234, 237 (1968); *Sibron v. New York*, 392 U.S. 40, 55 (1968). By contrast, where a petitioner challenges only the administration of [their] sentence, and not [their] conviction, there is no presumption that collateral consequences exist for the purpose of creating an actionable case or controversy once [they] ha[ve] been released. *See Lane v. Williams*, 455 U.S. 624 (1982). In other words, when a petitioner does not attack his conviction, continuing collateral consequences required to demonstrate a concrete injury are not presumed and, therefore, must be proven. *See Spencer*, 523 U.S. at 14; *Beachem v. Schriro*, 141 F.3d 1292, 1294 (8th Cir.), *cert. denied*, 525 U.S. 938 (1998).

*De La Cerda*, 2005 WL 2656349, at *6 (citations modified). Because the former parolee raised only error in the administration of his sentence based on the objectionable conditions, and habeas relief in the form of release from the conditions was no longer possible, the *De La Cerda* court went on to dismiss the claim as moot for lack of a justiciable controversy. *See id.* at *7. The court reached the same result, assuming the case was governed by § 1983, again, because the objectionable conditions no longer applied. *See id.* at *7 n.5. It bears noting, for such purposes, that the former parolee did not seek retroactive relief in the form of monetary damages. *See, e.g.*, *Mellen v. Bunting*, 327 F.3d 355, 364-65 (4th Cir. 2003), *cert. denied*, 541 U.S. 1019 (2004) (holding that a request for injunctive relief upon a challenge to the constitutionality of supper prayer at a military institute became moot upon the plaintiff's graduation, although their request for monetary damages continued to present a live controversy).

The facts of *De La Cerda* are functionally the same to those here. Petitioner complains only as to the use of a GPS tracker, but his mandatory supervision has been revoked, so there is no objectionable condition left to remove or modify, and Petitioner does not otherwise mention relief in the form of money damages, whether through the Petition or any of his subsequent briefing.[9] The *De La Cerda* case counsels, therefore, that Petitioner's claim be dismissed as moot.

Ignoring any procedural hurdles, this claim is nonetheless patently frivolous. Contrary to Petitioner's reading of the administrative record, the Parole Board does not appear to have referred to the use of a "curfew monitor" in imposing the electronic monitoring condition. As an "electronic" device that "monitors" one's location at any given time, a GPS tracking device clearly falls under the rubric of an electronic monitoring program. Pressing the issue further, insofar as a GPS tracker can track a person's location relative to a given area past specified hours, the device would even qualify as a curfew monitor.

Therefore, the Magistrate Judge concludes that Petitioner's claim over the conditions of his mandatory supervision should be dismissed as moot and otherwise denied as meritless.

## B. Revocation Proceedings

Challenging the revocation process, Petitioner complains that Officer Vidaurri (1) failed to properly advise him regarding the waiver of the parole revocation hearing, (2) failed to properly explain his right to waive only the preliminary hearing, and (3) generally failed to properly explain the revocation process. (Dkt. No. 1 at 6-7). Respondent argues that the first of these sub-claims fails on multiple procedural bases,[10] while all the sub-claims otherwise fail because they are not

---

[9] Nor are money damages mentioned in the Motion for Leave to Amend the Petition. (*See* Dkt. No. 14).

[10] Among these procedural issues is that of the failure to exhaust. For reference, a petitioner "must exhaust all available state remedies before [they] may obtain federal habeas corpus relief." *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995). State remedies are "exhausted" when the substance of the petitioner's claims have been fairly presented to the state courts. *Vela v. Estelle*, 708 F.2d 954, 958 (5th Cir. 1983) (citing

supported by the administrative record. (*See* Dkt. No. 8 at 4-17).   Whatever the case, the administrative record of the revocation proceedings, when viewed under the applicable law, is sufficient to support a denial of Petitioner's claims by the TCCA on the ground that Petitioner waived his revocation hearing.[11]

Here, through Section C of the Revocation Form, Petitioner signed a written waiver of his right to the revocation hearing, which read in its entirety as follows:

> I do not want a REVOCATION hearing.  I understand that the parole officer has no authority to make promises as to what will happen if I do not have a hearing.  I also understand that the Parole Board will, in all probability, revoke.  I have not been coerced into signing this waiver.

(Dkt. No. 8-2 at 4 (emphasis in original)).  Based on similar waivers, several district courts have upheld the denial of habeas claims raising due process violations in the context of Texas revocation proceedings. *See Lewis v. Director, TDCJ-CID*, 2014 WL 7213192, at *4 (E.D. Tex. Dec. 18, 2014); *see also Demond Lamont Wilson v. Director, TDCJ-CID*, 2014 WL 6879333, at *4 (E.D. Tex. Dec. 4, 2014); *Willie James Wilson v. Thaler*, 2012 WL 202079, at *4-5 (S.D. Tex. Jan. 20, 2012).  Petitioner has not shown that the TCCA's denial of his state habeas application—which inherently concludes that the waiver was proper—involved an unreasonable application of law or determination of fact.  *See Demond Lamont Wilson*, 2014 WL 6879333, at *4; *see also Willie James Wilson*, 2012 WL 202079, at *4 (holding that, where the state trial court took no action on

---

*Picard v. Connor*, 404 U.S. 270, 278 (1971)).  Generally, this requires presenting those claims to the highest court of the state on either direct or collateral review. *Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir. 2004).

[11] Although the TCCA does not appear to have been forwarded a copy of the administrative record, this court is not precluded from considering the administrative record for purposes of federal habeas review. *See Higgins v. Cain*, 720 F.3d 255, 262-63 (5th Cir. 2013) (holding that the federal habeas court could review voir dire transcript even though the transcript was not before the state post-conviction court insofar as the Supreme Court's decision in *Cullen v. Pinholster*, 563 U.S. 170 (2011), "merely reconstruct[s] facts [known] to the state trial court").  Otherwise, the allegations raised by Petitioner through his state habeas application cover most of the relevant facts reflected in the administrative record.

the petitioner's state habeas application and the TCCA denied relief, the "implied findings that petitioner was not entitled to a preliminary hearing and that he knowingly and voluntarily executed the hearing waiver" were to be presumed correct unless rebutted by clear and convincing evidence); *Lewis*, 2014 WL 7213192, at *4 (citing *Byrd*, 733 F.2d at 1138) ("A state court's finding that a petitioner validly waived his right to a parole revocation hearing must be afforded a presumption of correctness.").

Insufficient for purposes of supporting habeas relief are Petitioner's conclusory allegations of coercion by Officer Vidaurri. *See Lewis*, 2014 WL 7213192, at *4 (rejecting allegation as conclusory that parole officer and supervisors acted in bad faith in obtaining petitioner's waiver of a revocation hearing); *see also Demond Lamont Wilson*, 2014 WL 6879333, at *4 (rejecting allegation as conclusory that parole officer offered improper advice as to the waiver of a revocation hearing); *Willie James Wilson*, 2012 WL 202079, at *5 (rejecting allegation as conclusory that petitioner was dyslexic and unable to read or write when he executed the hearing waiver).

These allegations are also meritless or otherwise contradicted by the record. Officer Vidaurri supposedly told Petitioner that going through with a revocation hearing would be a waste of her time because of the GPS tracking records. (Dkt. No. 1 at 7). This amounted to a representation that mandatory supervision would be revoked, even if Petitioner went through a hearing, because of the strength of the documentary evidence supporting his violations. To the extent this representation was accurate—and no reason is offered to doubt the same—Officer Vidaurri's statements were not overly coercive. *See, e.g., United States v. Jacobs*, 63 F.4th 1055, 1059-60 (6th Cir. 2023) (truthful statements about adverse evidence and inartful threats to conduct thorough but lawful searches are not of themselves impermissibly coercive for purposes of evaluating the voluntariness of a suspect's confession); *United States v. Holmes*, 699 F. Supp. 2d

818, 837-38 (E.D. Vir. 2010) (truthful statements about a suspect's legal predicament are not of themselves impermissibly coercive for purposes of evaluating the voluntariness of a confession); *Jones v. Estelle*, 584 F.2d 687, 690 (5th Cir. 1978) ("Trial counsel's irritation and impatience, although certainly not commendable, do not amount to mental coercion sufficient to overbear [a defendant's] free will. Moreover, a plea is not involuntary solely because a defendant pleads guilty out of a desire to limit the possible penalty.").

Petitioner also complains of Officer Vidaurri's failure to tell him that mandatory supervision would probably be revoked if he waived the revocation hearing. (Dkt. No. 1 at 6). This allegation is contradictory in several ways. For one, it is internally contradictory considering the other allegation just discussed—i.e., that Officer Vidaurri conveyed to Petitioner that mandatory supervision would be revoked regardless of whether he decided on a hearing. This allegation is also contradicted by the text of the hearing waiver, which stated Petitioner's "understand[ing] that the Parole Board [would], in all probability, revoke." (Dkt. No. 8-2 at 4).

According to Petitioner, Officer Vidaurri also essentially ignored his question over whether he could waive a preliminary hearing but still ask for a revocation hearing.[12] (Dkt. No. 1 at 7). More specifically, Petitioner alleges that—

> —[w]hen [Officer Vidaurri] visited me at [the detention center], I asked her [whether][,] if I waived the preliminary hearing[,] if I could still choose to go to the revocation hearing. She said she didn't know and had to ask her supervisor, and [that she] would return in "5 minutes." I had already signed the [revocation] waiver and she never returned . . . .

(*Id.*). Petitioner fails to explain how Officer Vidaurri's non-response coerced his waiver. All indications are, based on the sequence of events, that Petitioner intended to waive the revocation

---

[12] As noted above, the waiver of a revocation hearing eliminates the need for a preliminary hearing. *De La Garza*, 2012 WL 2520864, at *10.

hearing, regardless. By his own account, Petitioner had already signed the revocation hearing waiver when he asked his unanswered question about the waiver of the preliminary hearing.

Moreover, even if Petitioner's claims were to be considered on their merits, they would fail given the contents of the Revocation Form. The claims boil down to complaints over Officer Vidaurri's alleged failure to properly explain the waiver of the preliminary and revocation hearings, as well as the revocation process in general. (*See id.* at 6-7). But Section A of the Revocation Form reviews most of these matters, including Petitioner's rights in the revocation process, in substantial detail: (1) the right to written service of the violations; (2) the right to a preliminary hearing, as well as its nature and purpose; (3) the circumstances under which a revocation hearing is required, as well as the scope of that hearing; (4) the right to the disclosure of adverse evidence; (5) the limited right to a state appointed attorney or the right to hire an attorney; (6) the right to be heard in person by the hearing officer and to present evidence; (7) the limited right to confront and cross-examine witnesses; (8) the right to be heard on the violations; (9) in the case of revocation, the right to a written report setting forth the evidence in support of the violations; and (10) in the case of revocation after a hearing, the right to request that the Parole Board reopen the revocation hearing. (Dkt. No. 8-2 at 2). Appearing after these admonitions is a statement reading, "As indicated by my signature below, I affirm that I have been advised of my rights in the revocation process." (*Id.*). Below that is Petitioner's signature. (*Id.*). The matter of the explanation of the nature and effect of the waiver, as already reviewed here, is covered further by Section C of the Revocation Form. (*Id.* at 4).

For these reasons, the Magistrate Judge concludes that Petitioner's due process claims concerning the revocation proceedings are without merit and should be denied.

## C. Motion for Expansion of the Record

Through the Motion for Expansion of the Record, Petitioner requests an evidentiary hearing and the opportunity for written discovery. (Dkt. No. 12). According to Petitioner, these procedures will help him establish or support that Officer Vidaurri did the following: (1) made false and misleading statements against him through the violation reports; (2) extracted involuntary admissions from him; (3) engaged in coercive tactics for purposes of obtaining his waiver of the revocation hearing; and (4) suppressed exculpatory evidence from or otherwise presented false evidence to the Parole Board. (*See id.* at 1). Petitioner also contends that discovery "will . . . allow [him] to acquire and present the records relevant to [the] exhaustion of state court remedies." (*Id.*).

Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts (the "Section 2254 Rules") provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Good cause exists where the allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be entitled to habeas relief. *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997). In other words, a petitioner must establish a prima facie claim. *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000), *cert. denied*, 531 U.S. 957 (2000). Conclusory allegations are not enough to make this showing, as Rule 6 does not authorize fishing expeditions. *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

"[A] district court has the discretion to hold an evidentiary hearing in a § 2254 proceeding, subject to statutory limits on considering evidence not presented to or developed in the state courts." *Davis v. Davis*, 807 F. App'x 337, 340 (5th Cir. 2020) (per curiam) (citing *Pinholster*, 563 U.S. at 181-82, 185-86). As discussed, under § 2254(d)(1), review is generally limited to the record that was before the state court. *See Woodfox*, 772 F.3d at 368. The record is subject to

expansion where § 2254(d)(1) does not bar federal habeas relief, either because the claims were not adjudicated on the merits in state court, or the state habeas court unreasonably applied federal law. *Medina v. Lumpkin*, 2023 WL 3852813, at *43 (S.D. Tex. June 6, 2023) (quoting *Pinholster*, 563 U.S. at 185 and *Evans v. Davis*, 875 F.3d 210, 217 n.5 (5th Cir. 2017)) (internal citations and quotations omitted). Also limiting federal review of claims not adjudicated on the merits in state court is § 2254(e)(2), which provides as follows:

> If the [petitioner] has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the [petitioner] shows that—
>
> > (A) the claim relies on—
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the [petitioner] guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). That said, "[o]vercoming the restrictions in § 2254(e)(2) does not . . . guarantee a petitioner an evidentiary hearing, it merely 'opens the door for one[,]'" such that "the district court retains the discretion to grant or deny an evidentiary hearing." *Cruse v. Banks*, 2020 WL 1817301, at *1 (N.D. Miss. Apr. 9, 2020) (quoting *Murphy*, 205 F.3d at 815).

Here, Petitioner requests further examination into mostly irrelevant matters. Petitioner does not raise any substantive claims related to false statements made through the violation reports, the extraction of involuntary admissions, and the nature of the evidence omitted from or presented

at the revocation hearing.[13]  As for the matter of exhaustion, the relevant documents have already been submitted into the record by Respondent, and the dismissal or denial of Petitioner's claims, as recommended here, is not otherwise based on the exhaustion defense.

Petitioner does seek to delve further into ostensible coercion by Officer Vidaurri.  But for reasons already discussed, Petitioner fails to raise a prima facie case of coercion or claim for relief, such that he fails to show good cause for discovery.  In terms of a hearing, review is limited by § 2254(d)(1) to the state court record insofar as Petitioner's claims were adjudicated by the TCCA on the merits and the TCCA did not unreasonably apply federal law.  Nor does Petitioner specifically raise, let alone establish, any of the bases for a hearing under § 2254(e)(2).

For these reasons, the Magistrate Judge concludes that the Motion for Expansion of the Record should be denied.

## V. CONCLUSION

After review of the record and relevant law, the Magistrate Judge respectfully RECOMMENDS that Petitioner's claims under the Petition (Dkt. No. 1) be summarily DISMISSED or DENIED, as applicable, and that Petitioner's Motion for Summary Judgment (Dkt No. 17) and Motion for Expansion of the Record (Dkt. No. 12) be DENIED.

### *Certificate of Appealability*

The Magistrate Judge must also address the matter of the issuance of a certificate of appealability ("COA").

A petitioner may not appeal the final order of a habeas corpus proceeding "unless a circuit justice or judge issues a [COA]."  28 U.S.C. § 2253(c)(1).  Rule 11 of the Section 2254 Rules instructs that the District Court "must issue or deny a [COA] when it enters a final order adverse

---

[13] To the extent that Petitioner moves to amend his pleadings to raise such claims, his Motion for Leave to Amend the Petition (Dkt. No. 14) is subject to denial for the reasons discussed in a contemporaneous order.

to the applicant." A petitioner is entitled to a COA when he shows that a reasonable jurist would find it debatable "whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling[.]" *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); 28 U.S.C. § 2253(c).

Having concluded that Petitioner fails to meet this threshold, the Magistrate Judge RECOMMENDS that the District Court deny a COA.

### Notice to the Parties

Within fourteen (14) days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file written objections within fourteen (14) days after service shall bar an aggrieved party from de novo review by the District Court on an issue covered in this report and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of clear error or manifest injustice.

### Directive to Clerk of Court

The Clerk of Court is DIRECTED to forward a copy of this report to the parties by any receipted means.

DONE at McAllen, Texas this 18th day of August 2023.

J. SCOTT HACKER
United States Magistrate Judge